UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HEINRICH P. HARDT, *et al.*, | ) | Civil No. 11-cv-1191-L(WVG) |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING** |
| | ) | **DEFENDANTS' MOTION TO** |
| | ) | **COMPEL ARBITRATION AND** |
| v. | ) | **STAY CASE [DOC. 10]** |
| | ) | |
| DIRECT INVEST LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is Defendants Direct Invest LLC and Direct Invest Manager LLC's motion to compel all of Plaintiffs Heinrich P. Hardt and Araceli Hardt's claims asserted in their complaint to arbitration and stay the case pending the outcome of that arbitration. Plaintiffs oppose.

The Court found this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Doc. 12.) For the following reasons, the Court **GRANTS** Defendants' motion to compel arbitration and stay the case.

//

11cv1191

## I.    BACKGROUND

This action involves two real-estate investments that Plaintiffs purchased in Braintree, Massachusetts ("Braintree Park") and, separately, in Merrimack, New Hampshire ("Heron Cove").  (Compl. ¶¶ 5–7.)  The parties completed both transactions through written and signed purchase agreements.  (Clary Decl., Exs. 1–2.)   Both parties signed the Braintree Park Purchase Agreement ("BPPA") on December 3, 2007, and the Heron Cove Purchase Agreement ("HCPA") on March 4, 2008.  (*Id.*)

Both purchase agreements contain identical arbitration clauses.  (BPPA ¶ 8.17, HCPA ¶ 8.17.)  The arbitration clauses state, in pertinent part:

> Any dispute, claim or controversy arising out of or related to this Agreement, the breach hereof, the termination, enforcement, interpretation or validity hereof, or an investment in the Interests shall be settled by arbitration in New York, New York, in accordance with the rules of The American Arbitration Association, and judgment entered upon the award rendered may be enforced by appropriate judicial action pursuant to New York law.  The arbitration panel shall consist of one (1) member, which shall be selected by the Property Manager from the list of pre-approved arbitrators listed in Exhibit "D" hereto.  The losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorney's fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by him or the prevailing party or such costs shall be allocated by the arbitrator.

(*Id.*)

On April 26, 2011, Plaintiffs, individually and as trustees of the Hardt Family Trust, commenced this action in San Diego Superior Court, asserting four state-law causes of action: (1) securities fraud, (2) common-law fraud and deceit, (3) negligence and negligent misrepresentation, and (4) elder abuse.  At the heart of these claims are Plaintiffs' allegations that Defendants made false and misleading statements, and omissions of material facts that induced them to purchase these properties, which are "both imploding and on the verge of foreclosure."  (Compl. ¶¶ 7–8, 15 [Doc. 1-1].)  Thereafter, Defendants removed the case to this Court.  (Doc. 1.)

Defendants now move to compel arbitration of all causes of action contained in the complaint and request a stay of the instant case pending the outcome of arbitration.  (Doc. 10.)  Plaintiffs oppose.  (Doc. 11.)

11cv1191

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs disputes involving contracts that touch upon interstate commerce or maritime law.  9 U.S.C. §§ 1 *et seq*.  The FAA preempts state law where the validity of an arbitration clause is disputed.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  It also "embodies a clear federal policy in favor of arbitration."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)

"The standard for demonstrating arbitrability is not high."  *Simula*, 175 F.3d at 719.  The district court can only determine whether an agreement to arbitrate exists, and if so, to enforce it in accordance with its terms.  *Id.* at 720 (citing *Howard Elec. & Mech. v. Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985)).  In other words, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

To determine whether parties have agreed to arbitrate a dispute, courts apply general state-law principles of contract interpretation.  *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).  Once an agreement to arbitrate is found to exist, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Simula*, 175 F.3d at 719 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).  In California, "[o]nce the moving party has established the existence of the arbitration agreement, the burden shifts to the party opposing arbitration to establish, by a preponderance of the evidence, the factual basis for any defense to enforcement."  *Mission Viejo Emergency Assocs. v. Beta Healthcare Grp.*, 197 Cal. App. 4th 1146, 1154 (2011).

The Supreme Court has held "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Quakenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380 (9th Cir. 1997).  Enforcement of an arbitration agreement "should not be denied unless it can be said with positive assurance that the

11cv1191

1   arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*

2   *Tech., Inc. v. Commc'n Workers,* 475 U.S. 643, 650 (1986); *see also United Food and Comm.*

3   *Workers Union v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir. 1993) ("Doubts should be

4   resolved in favor of coverage."). Thus, to determine whether this case must be submitted to

5   arbitration, the Court must limit its inquiry to: (1) whether a valid agreement to arbitrate exists,

6   and if it does, (2) whether the dispute falls within the scope of the agreement to arbitrate. *See*

7   *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

8

9   **III.    DISCUSSION[1]**

10       The sole issue before the Court is whether the arbitration clauses under the parties'

11   purchase agreements are enforceable.[2] Thus, it is Plaintiffs' burden to show that a factual basis

12   for any defense to enforcement exists. *See Mission Viejo Emergency Assocs.*, 197 Cal. App. 4th

13   at 1154. Plaintiffs argue that the arbitration clauses in the purchase agreements are

14   unenforceable because they are unconscionable. (Pls.' Opp'n 2:2–3, 17:13–14.) The Court

15   disagrees.

16       Under California law, an arbitration agreement is unenforceable if it is both procedurally

17   and substantively unconscionable. *Davis v. O'Melveny & Myer*, 485 F.3d 1066, 1072 (9th Cir.

18   2007) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).

19   The former focuses on "oppression" or "surprise" due to unequal bargaining power, and the

20   latter on "overly harsh" or "one-sided" results. *Armedariz*, 24 Cal. 4th at 114. Courts apply a

21

22   _____

23       [1] Under the FAA, the question of whether an agreement to arbitrate is valid is generally
governed by state law. *First Optics of Chicago, Inc. v. Kaplan*, 514, U.S. 938, 944 (1995).

24   Although the purchase agreements contain choice-of-law provisions that New York law will
apply, both parties analyze the validity of the arbitration clause under California law.
Accordingly, the Court does the same. *See Mundi*, 555 F.3d at 1044.

25

26       [2] The arbitration clauses do not designate which state's laws should apply. (*See* BPPA ¶
8.17, HCPA ¶ 8.17.) Thus, Plaintiffs' challenges to the choice-of-law clauses (Pls.' Opp'n

27   15:3–16:19 [Doc. 11]) are outside of the scope of the Court's analysis here and will not be
considered at this time. *See Simula*, 175 F.3d at 719; *see also Buckeye Check Cashing, Inc. v.*

28   *Cardegna*, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause
itself, the issue of the contract's validity is considered by the arbitrator in the first instance.")

4

sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Davis*, 485 F.3d at 1072 (quoting *Armedariz*, 24 Cal. 4th at 1072). Still, "both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1530-31 (1997)).

"In assessing procedural unconscionability, the court . . . focuses on factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010). An agreement or any portion thereof is procedurally unconscionable if "the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002). Thus, a contract is procedurally unconscionable under California law if it is "a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pokorny*, 601 F.3d at 996 (citing *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003)).

Plaintiffs provide very little to support their argument that the arbitration clauses are procedurally unconscionable.[3] Their tenuously relevant support includes declarations riddled with legal conclusions and irrelevant contentions, and "offering memoranda" for the Braintree Park and Heron Cove properties. In response, Defendants provide, among other things, a Purchaser Questionnaire completed by Plaintiffs. (Clary Decl., Ex. 3.) In the Purchaser Questionnaire, Plaintiffs indicated that they have "knowledge and experience in financial and business matters [such] that [they are] capable of evaluating the merits and risks of a purchase in the Interests." (Purchaser Questionnaire 5.) They also added that their experience in financial

---

[3] Plaintiffs attempt to splice the arbitration clause into three component provisions for their arguments: choice of law, venue, and arbitrator selection. The Court finds that these distinctions are irrelevant to the overall analysis of whether the arbitration clauses are unconscionable. Accordingly, the Court assesses the arbitration clauses in their entirety.

11cv1191

1  and business matters included "Real Estate investor for 40+ years" and "Retired engineer." (*Id.*)

2  Plaintiffs reiterated their real-estate experience further into the questionnaire, adding that they

3  own the three properties and writing in that they "Have bought & sold properties for 40 years."

4  (*Id.* at 57.)  Lastly, Plaintiffs stated their net worth at $10,395,000 as of February 22, 2008 in the

5  Financial Statement. (*Id.* at 59.)

6       Ultimately, there are no facts before the Court to show that Plaintiffs were surprised by

7  the arbitration clauses or oppressed into a take-it-or-leave-it contract without the opportunity for

8  meaningful negotiation.  In fact, the arbitration clauses appear to invite the parties to negotiate at

9  least the list of the three "*pre-approved* arbitrators" from which the arbitrator would be selected.

10  (BPPA ¶ 8.17, HCPA ¶ 8.17.)  Plaintiffs are experienced and sophisticated business people

11  backed by considerable assets, and they fail to provide any factual basis for any procedural

12  unconscionability.  Thus, as the party opposing the arbitration clauses, Plaintiffs fail to meet

13  their burden to provide a factual basis for a defense to enforcement.  *See Mission Viejo*

14  *Emergency*, 197 Cal. App. 4th at 1154.  Consequently, the Court need not address substantive

15  unconscionability.  *See Davis*, 485 F.3d at 1072.  Therefore, the arbitration clauses are

16  enforceable in their entirety.

17

18  **IV.**    **CONCLUSION & ORDER**

19       In light of the foregoing, the Court **GRANTS** Defendants' motion to compel arbitration

20  for all claims asserted in the complaint, and **STAYS** the case pending the outcome of the

21  arbitration.  (Doc. 10.)

22       **IT IS SO ORDERED.**

23

24  DATED: January 31, 2012

25                                  M. James Lorenz

                                United States District Court Judge

26  COPY TO:
HON. WILLIAM V. GALLO

27  UNITED STATES MAGISTRATE JUDGE

28  ALL PARTIES/COUNSEL